JOHN C. CUSHMAN AND J. D. HARVEY

v.

THOMAS P. BONFIELD.

*Railroads—Foreclosure—Reorganization—Issue of Bonds—Fraud—Evidence—Practice.*

1. A plan of reorganization of a railroad company, whose mortgage is foreclosed, by which the bondholders agree that the property shall be bought in trust for them, and new bonds issued in an amount greater than the old issue, is not void, though it does not appear that the new issue is to be used for the purposes of the corporation.

2. In such case the trustee who purchases the property can not, so long as he holds title thereto, deny the interest of one of the bondholders for whom he purchased.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Kankakee County; the Hon. N. J. PILLSBURY, Judge, presiding.

The complainant is the owner of bonds of the Plymouth, Kankakee & Pacific Railroad Company, out of 398 bonds secured by a first mortgage on the property rights and franchises of this company. Each of the bonds called for $1,000, and is payable in thirty years, with interest at the rate of seven per cent, represented in coupons. Bills of complaint were brought in the Circuit Court of Newton County, Indiana, and the Circuit Court of the United States in the Northern District of Illinois, for the foreclosure of this mortgage, and decrees of foreclosure were duly entered in each case. In the Newton County Circuit Court it was provided that the sale should be made under the auspices of the Federal court, and such sale should be confirmed by the Newton County Circuit Court. In these decrees the complainant was found to be the owner of eight of these bonds, upon which there was then due $10,360.44, and William C. Richards was found to be the owner of five of these bonds, upon which there was

then due $6,624.51.  The usual course was adopted by the owners of the bonds of this company, in making such sale, in purchasing the property and reorganizing it by electing a person, who in this case was appellant Cushman, to bid in the property at the sale, as trustee, for the benefit of all the bondholders.    Three hundred and eighty-three of the bonds in the hands of the bondholders executed to Cushman powers of attorney under a plan of reorganization submitted to the bondholders and approved by them, and forming a part of the powers of attorney.    This power of attorney empowered Cushman to purchase the property rights and franchises at this foreclosure sale as such trustee, and then reorganize the company, issue to each bondholder new bonds from the reorganized company, for the principal sum of their old bonds, in an issue at the rate of $23,000 per mile, covered by a first mortgage, and for the accrued interest upon the old bonds, income bonds secured by a second mortgage.    It also provided that the bondholders should pay $5 upon each of their bonds, to be used to pay the costs and expenses of these suits and this sale, estimated at $2,000.    It was also stated therein that the attorneys' fees for the foreclosure of this mortgage, and $2,000 allowed by the Federal court to George W. Cass for his services as trustee in the old mortgage, had been provided for in some special arrangements, nowhere explained in these proceedings, and would not be a call on the bondholders.

Among the holders of these bonds who executed this power of attorney and delivered to Cushman their bonds as such trustee were the complainant, then owning eight bonds with the coupons belonging to them, and Francis S. Campbell, administrator of the estate of William C. Richards, then deceased, owning five of the bonds and coupons thereto, belonging to the Richards estate.

Cushman accepted this trust, and at this sale bid in the property for the sum of $4,000 as " *trustee of the bondholders*," as reported to the Federal court by Bishop, the master in chancery.  Cushman then made a call on the holders of these bonds for the payment of $5 upon each of these bonds according to the provisions of the powers of attorney and plan of reor-

ganization. Some of the holders of the bonds met this call
and some did not. Among those who met the call were the
complainant and Campbell. The complainant paid Cushman
$40; Campbell paid Cushman $25. Subsequently Cushman
made another call on the bondholders for $4 on each bond,
made necessary by reason of the deficiency, owing to a portion
of the bondholders failing to meet the previous or first call,
and the complainant under this call paid Cushman $32, and
Campbell as administrator paid him $20. These were all the
calls ever made by Cushman on the holders of these bonds.
Subsequently the five bonds belonging to the Richards estate
were sold under an order of the County Court at public ven-
due, with other notes, obligations and assets of the estate, and
the complainant became the purchaser of them, and he there-
by became the owner of thirteen three hundred and ninety-
eighths of this property equity. The last call made by Cush-
man on the bondholders for $4 was only met by a part of
them, and he did not have money previous to 1881 to make
payment on the amount of his bid. It appears that he made
various attempts to raise the balance of the money necessary
to pay the bid, in which he was aided by complainant and
other of the bondholders at Kankakee, and many different
schemes were suggested, discussed and dismissed to bridge
over the difficulty so as to raise the amount of money neces-
sary to pay the bid and confirm the sale. Many bondholders
became dissatisfied at the situation, lost confidence in Cush-
man's ability to carry out the enterprise and took away from
him their bonds and their money advanced to him, and
in his answer he claims that in June, when he deeded the
property to Thatcher and Taintor, as trustees of the Harvey
syndicate, he only represented thirty-four bonds, thirteen of
which belonged to complainant. Cushman says in his answer
that Harvey in May, 1881, had become the owner of three-
fourths of all the bonds.

The appellants claim that in February, 1881, Harvey, after
having filed a protest in the Federal court against the con-
firmation of the master's sale to Cushman, furnished Cush-
man with the money to pay the amount of the bid, and upon

the joint petition of Harvey and Cushman as representing the whole number of bonds, had the sale confirmed in Cushman and a deed issued to him for the property; and subsequently, on the 22d day of June, 1881, Cushman and his wife deeded the property as if he held it absolutely in his own right, to Thomas Thatcher and Giles E. Taintor, and on the 11th day of July, 1881, he made another deed of the same property to the Indiana, Illinois & Iowa Railroad Company, a corporation recently organized, recorded only in Illinois, and also another deed of the same property to Adam W. Spies, A. S. Comstock and George Holt, recorded only in Indiana.

The complainant on the 12th day of July, 1881, filed this bill of complaint for relief and asked that bonds might be given to him according to the plan of reorganization. The defendant, Cushman, answered this bill by claiming that the plan of reorganization had failed through a want of money to pay the bid, and because certain parties he had contracted with for completing the road had failed to perform, and that after receiving deeds from the officers of the courts, and to enable him to obtain these deeds, Harvey had advanced to him about $10,000, including $4,000 paid to Nichols; he conveyed the property, upon request of five-sixths of the bonds of the bondholders, to the Indiana, Illinois & Iowa Railroad Co.; and that Nichols had obtained a decree in the Newton County Circuit Court against the P. K. & P. R. R. Co., which became by the decree a lien prior to the mortgage, under which the property was sold and the title vested in Nichols, which was paramount to Cushman's title; and that before deeding this property to the I. I. & I. R. R. he received an agreement from Harvey to pay the owners of the bonds he (Cushman) represented $50 for each of their bonds, together with all assessments previously paid by them, or in lieu thereof; by their first paying their *pro rata* share of the costs and expenses necessary to secure the absolute title of the property, they should receive ten shares in the capital stock in the I. I. & I. R. R. Co. for each bond, said shares being for $100 each, which in effect was that this was to be in full for the interest of the bondholders represented by Cushman in

the property. Consideration of this conveyance was not stated.

The Indiana, Illinois & Iowa Railroad Company, in their answer to the bill, claim to have had no notice of complainant's equities, and denied the trust, and denied that Cushman ever had any valid title to the property; that the Nichols title was paramount, and that they held under this title. The appellant, Harvey, denied that Cushman was ever trustee of the complainant; claimed that he furnished money to pay up the bid, and an amount to pay Crawford & McConnel, solicitors of the complainant in the foreclosure proceedings, and also money to purchase the Nichols claim; and also claimed that the deeds to Cushman by the Federal court, and Circuit Court of Newton County were absolute, and not in trust, and denied that the property had any considerable value, and denied that complainant had any equities in it.

A supplemental bill was subsequently filed to which the defendants answered. Complainant here says that in these proceedings no evidence was offered showing this Nichols title. Harvey and Cushman claimed to have paid Nichols $4,000, but so much of the defense as asserted that the Nichols title was paramount to the trust title in Cushman was abandoned.

In the appellants' argument in this case, as well as the entire evidence of appellants, it will be seen that the defense that Cushman was not trustee for complainant at the time he made the conveyances, and that the title of Harvey was free from any equitable claims of the complainant, was abandoned by the appellants. In the appellants' argument in this cause they admit that the complainant is entitled to relief, but deny that such relief should be in giving him bonds in the I., I. & I. R. R., according to the plan of the reorganization between the bondholders and Cushman. They deny that the relief he is entitled to is in paying him thirteen three hundred and ninety-eighths of the purchase money Harvey got for the property from the syndicate or construction company. They claim that the only relief he is entitled to, if any, is thirteen three hundred and ninety-eighths of the stock that

Harvey took in the construction company, subject to the payment of a *pro rata* share of the expenditures of Harvey.

Upon a final hearing upon the bill, the amended and supplemental bill of complainant, and the separate answers of Joel D. Harvey, John C. Cushman and the Indiana, Illinois & Iowa R. R. Co., to the bill and supplemental bill, and upon the proofs and testimony, the court below found the equities in favor of the appellee; that he was the owner of thirteen of the bonds and coupons thereto attached, of the Plymouth, Kankakee & Pacific R. R. Co. and secured by the mortgage and trust deed described in the bill, and that the last named company had issued and sold three hundred and ninety-eight of said bonds and that appellee became the owner of thirteen of them as charged in the bill; that the said Cushman was empowered by power of attorney to be complainant's trustee to purchase the property and franchise described in the mortgage, at a sale to be made under decree of foreclosure, for the benefit of appellee and the other bondholders as charged in the bill; and that the said Cushman purchased the same as trustee of the said complainant and the other bondholders charged in the bill.

The court further found that the appellant Harvey became the owner of the majority of the said bonds issued and sold as aforesaid, and entered into a fraudulent conspiracy with the appellant Cushman to defraud complainant and other holders out of their interests and said property rights and franchises, and to convey the same to their use, to the exclusion of the appellee. And in the execution of said conspiracy appellant Cushman in collusion with appellant Harvey, sold and conveyed to the Indiana, Illinois & Iowa R. R. Co., by a quit-claim deed, the said property rights and franchises of the said Plymouth, Kankakee & Pacific R. R. Co., and also made and delivered a quit-claim deed of the said property to Spies, Holt and Comstock, who subsequently quit-claimed the same to the Indiana, Illinois & Iowa R. R. Co. as alleged in the bill.

The court further found that the appellants, Harvey and Cushman, received from the Indiana, Illinois & Iowa R. R.

Co., in consideration of the said conveyances, the sum of $150,000, no part of which was paid to appellee, who, after deducting $4,000 paid to buy up the mechanic's lien thereon, was entitled to his *pro rata* share of said sum and interest thereon.

The court further found that at the time of the conveyances by said Cushman aforesaid, of the said property rights and franchises, the value thereof was $150,000, and that appellee's equitable interest therein was thirteen three hundred and ninety-eighth parts of said trust estate vested in said Cushman as aforesaid, and the bill of complaint was dismissed as to Spies, Holt and Comstock.

And the court rendered a money decree against appellants, Harvey and Cushman, in favor of appellee, for the sum of $7,057.80 and costs of suit, being his *pro rata* share aforesaid, and the suit was also dismissed as to the Indiana, Illinois & Iowa R. R. Co.

And thereupon the said Joel D. Harvey and John C. Cushman excepted to the said decree and prayed an appeal to this court, which was granted.

Messrs. H. K. WHEELER and G. W. & J. T. KRETZINGER, for appellants.

Mr. THOS. P. BONFIELD, *pro se.*

The first point made by the appellants in their argument is that the plan for reorganization of this railroad, adopted by the bondholders and Cushman, was void, because it provided for an issue of bonds amounting to $3,750,000 and a second mortgage of $2,000,000, while the P., K. & P. R. R. mortgage issue was only $3,600,000, (what connection is there between these two facts?) and that before a railroad company can issue bonds it must appear that the money to be received shall be applied for the purpose of the corporation; that the issue of bonds is prohibited, except for money, labor or property actually received and applied for the purposes which such corporation was created; citing Article 11, Section 12, of the Constitution of 1870.

The provision of the constitution has received a construction in the case of P. & S. R. R. Co. v. Thompson, 103 Ill. 187, in which it was held that it was intended in this provision that "No railroad corporation shall issue any stock or bonds except for money, labor or property actually received and applied to the purpose for which such corporation was created;" and that "all stocks, dividends and other fictitious increase of the capital stock or indebtedness of such corporation shall be void," was to prevent reckless and unscrupulous speculators, under the guise or pretense of building a railroad or of accomplishing some other legitimate corporate purpose, from fraudulently issuing and putting on the market bonds or stocks that do not and are not intended to represent money, or property of any kind either, in expectancy—the stocks or bonds, in such case, being entirely fictitious. That it was not intended to interfere with the customary methods of railroad companies to raise money, by the issue of bonds and stocks, for the purpose of building these roads and accomplishing the legitimate purposes of the corporation.

Lacey, J. The main point urged by appellants for reversal is as follows, to wit: Because the original plan of reorganization was contrary to the law and void; because the original plan of reorganization long prior to the year 1881 had been abandoned with the knowledge and consent of appellee; because the conveyance from Cushman to the I. I. & I. R. R. Co. was made with the knowledge and consent of the appellee; that appellee had agreed to put in his bonds on the same basis as the appellant Harvey; because the charge of fraud made in the bill against appellants in making the sale was not sustained; because appellee agreed to and requested, in case of sale of the P., K. & P. road, that he should have from the purchasers just what the other bondholders would get; because the court erred in permitting the appellee to elect to abide by the sale in part and disaffirm it as to the consideration received for the property; because the demand made for the bonds was made after the fixing of the original and amended bills, and the sale and transfer of the road to the I., I. & I.

R. R. Co. took place before the filing of those bills; because the relief granted could not be had under the prayer for general relief.

We will consider these objections in the order named. And first, we do not regard the plan of reorganization void under our constitution. The question appears to be settled by the Supreme Court in the case of P. & S. S. R. R. Co. v. Thompson, 103 Ill. 187. In that opinion the court gave construction to the provision of the constitution which provides that "No railroad corporation shall issue any stock or bonds except for money, labor or property actually received and applied to the purpose for which such corporation was created," and that "all stocks, dividends and other fictitious increase of the capital stock or indebtedness of such corporation shall be void." And it was there held, in substance, that the bonds may be sold by the railroad company for money to build a road or effectuate other lawful objects, and that railroad companies have a right to dispose of their bonds for a present consideration and for a corporate purpose, and, in such case, if the railroad company should subsequently divert the proceeds of the bonds to other than corporate purposes, the purchaser of such stock or bonds who has acted in good faith in the matter can not be affected by the subsequent misappropriation of the company.

We find no proof in this case, under this view of the law, that would render void the appellee's bonds; besides it comes with bad grace from the appellant Harvey, who has received $150,000 for bonds similarly issued and partly in consideration of appellee's bonds, to make such a point against appellee. He has received value for appellee's bonds and should respond to him for the amount.

As to the point that the original plan of organization had been abandoned, we can only say that while that may be so in one sense, yet as long as appellant Cushman held the title to the original railroad property, purchased in as the trustee of appellee, who was to have a certain share in it proportioned to the bonds he held, the appellant could not be heard afterward to say that the appellee had no interest in the property, and sell it for the benefit of Harvey and himself, and, in fact,

in all his transactions and dealings with the trust property, up to the time of the sale in July, 1881, he never attempted to repudiate in his correspondence with appellee the interest that appellee had in it.

As to the contention of appellants that the appellee knew of the intended conveyance to the I. I. & I. R. R. Co. in July, 1881, and gave his consent to it, and agreed to put in his bonds on the same basis as Harvey, we think it is not sustained by the proof. We think, clearly, that so far from the complainant having knowledge of it, the appellants took great pains to conceal the fact of the sale and the terms of it from appellee. And this brings up the question as to whether the appellants acted fraudulently in making the sale complained of, and we think of this fact there can be but little doubt.

It appears quite clear that Harvey, who was the holder of two hundred and fifty of the bonds, intended, when he made the purchase from Cushman of the property in question, for the benefit of a railroad company to be organized, and with whom the Western Air Line Construction Co. was to make a contract for construction, in which construction company he was chief stockholder, procured by the sale of the property held by Cushman, to appropriate the whole benefit and profits arising from the completion of the road to his own individual use, to the entire exclusion of appellee.

And it further appears that Cushman was well aware of this intention and was aiding and abetting Harvey in carrying it out.

It further appears from the contract of indemnity taken by Cushman from Harvey and others, and other proof, that it was the intention to compel appellee to accept $50 on the thousand for the bonds which he held.

The letters received from Cushman and Harvey by appellee after the contract for the sale of the road had been made in New York, in 1881, made misleading and fraudulent statements in concealing the fact of the proposed sale; and for a long time afterward the sale was concealed from appellee, showing, as we think, conclusively, that there was no honest intention on the part of the appellants to give the appellee the benefits of the sale.

Nor is it a sufficient excuse for appellants to claim as a reason for concealing the sale from appellee, that he was engaged in building a rival line. Even if the proof showed that appellee would have been hostile to the proposed sale, which we do not think it does, certainly after it had been accomplished, and the deed made out, there could have been no further excuse for any further secretion and tortious conduct on the part of appellants.

It is claimed that appellee requested the sale of the P., K. & P. road, and that he should have from the purchasers only what the other bondholders would get. If this were so, it could in nowise excuse appellants from fraudulently selling the road and converting the proceeds to their own use

We do not understand that the appellee, in taking his decree in this case, must affirm the sale, so as to compel him to take the stock in the Western Air Line Co. He is proceeding to recover on a different ground, that of the fraudulent conversion of his property.

Nor was it necessary to make any demand for bonds; and the fact that he did make a demand at one time did not deprive him of his other legal remedies.

The last point raised by the appellants is, that the allegations in appellee's bill, to authorize him to receive a money decree under the prayer of general relief, are not sufficient. We think there are sufficient allegations in the amended bill upon which to base such decree. It was charged in the amended bill that the appellants conspired to and sold the property, which, the proof shows, cost $750,000, and conveyed it away to the I., I. & I. R. R. Co. and Spies, Holt and Comstock, and the evidence shows appellant Harvey received money, stock and bonds, and property consideration for the sale, which he kept and used, and converted the same to his own use. A *cestui que trust* is entitled to the value of the property taken by trustee or converted to his own use, or by others, from the trustee, with knowledge of the trust. G. S. & S. R. R. Co. v. Kelly, 77 Ill. 435.

It is claimed that the evidence does not show that the value of the property sold by appellant Cushman was $150,000.

Cushman v. Bonfield.

We think the evidence was abundant to show that it was worth that amount.

Appellant Harvey purchased it of Cushman and put it into the Air Line Construction Co., at a valuation of $150,000, and took stock in payment in that company for the amount.

The entire amount of the stock of the Air Line Co. was $1,000,000, and the other stockholders of the company put in cash to the amount of $850,000, and the amount of the work done on the road sold and the money expended was $750,000.

We think that appellant Harvey, allowing for all losses and depreciation in the work done, and money expended on the old road, and from the fact that $850,000 in cash was put into the enterprise by other parties, and the stock of the company taken at par, had a right to believe that his stock was also worth par, and since he converted it to his own use we think he ought to be compelled to account to others interested in it for the stock at par, he having accepted it as cash. And the fact, if it be a fact, that it afterward turned out to be of less value, could not be set up as an excuse for not accounting for it at par.

The rights of appellee should be fixed at the time of the conversion and not by what afterward happened. Harvey claims the stock has been worthless for some time, but a hundred and thirteen miles of the road have been completed and dividends earned, and the Air Line Co. has finished its enterprise, divided profits, and it is quite natural that the stock would now be worthless.

The evidence does not inform us on these points. The appellants failed to produce any evidence to show that they did not receive $150,000 on account of the Air Line stock.

As Harvey took the Air Line stock for $150,000 on his own account at par and fraudulently converted it, we think, under the circumstances, he should be debarred from denying that it was not worth what he took it at.

A point is made that Cushman is not jointly liable with appellant Harvey. We think clearly he is. He was an aider and abetter in the transaction, violated his trust and engaged in a fraudulent conspiracy to wrong appellee, and besides took an indemnifying bond from Harvey to save and keep himself

harmless from any damage that might occur to him on account of violating his trust to other stockholders not considered in the sale.

The court below, as we think, did not err in allowing the $4,000 paid by Harvey to extinguish the Nichols title acquired under foreclosure proceedings of a mechanic's lien.

This was brought in for the benefit of the whole title and the appellee should stand his share of the expense.

Appellant Cushman was not entitled to any allowance for costs and expenses, he having violated his trust.

Seeing no error in the record of the court below the decree is affirmed.                           *Decree affirmed.*